Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5369 | **DATE** | 2/28/2001 |
| **CASE TITLE** | ANNAMARIE FALZONE vs. MICHAEL CIMAGLIA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant's motion for summary judgment as to plaintiffs Anna and Angela Falzone is denied and defendants motion for summary judgment as to plaintiffs Annamarie and Anthony Falzone is granted. Status hearing set for March 20, 2001 at 9:30 a.m.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 0 1 2001 | 20 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | 01 FEB 28 PM 6:44 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNAMARIE FALZONE, ANNA FALZONE, ANGELA FALZONE, and ANTHONY FALZONE,<br><br>Plaintiffs,<br><br>v.<br><br>BERWYN POLICE DETECTIVE MICHAEL CIMAGLIA,<br><br>Defendant. | No. 99 C 5369<br><br>Judge John W. Darrah |

DOCKET
MAR 0 1 2001

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Annamarie Falzone (Annamarie), Anna Falzone (Anna), Angela Falzone (Angela), and Anthony Falzone (Anthony), commenced an action against defendant, Michael Cimaglia, alleging a violation of their rights under 42 U.S.C. § 1983. Before this Court is defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence is viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). However, the nonmovant must still come forward with evidence establishing the elements of his claim on which he bears the burden of proof at trial. As such, he must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

Defendant first argues that portions of plaintiffs' response to defendant's statements of undisputed facts should be stricken. Defendant objects to plaintiffs' response to the statements of facts in paragraph numbers 1, 2, 3, 23, 27, 30, 36, 54 and 56. The statements found in paragraphs 2, 3, 27, 30, 36, and 53 were not relied upon by the court. The statements found in paragraphs 1, 23, and 56, and plaintiffs' responses to those paragraphs, were considered by the court. However, the particular facts and terms that plaintiffs object to in these three paragraphs were not relied upon by the court. Accordingly, defendant's Motion to Strike is denied as moot.

In August, 1997, at approximately 3:00 p.m., Annamarrie Falzone and Thelma Washington (Washington), an African American, were involved in an argument following Annamarie's belief that Washington's car struck Annamarie's car in front of the Falzone residence. (Def.'s 56.1(a)(3) Statement ¶ 1). Annamarie initially stated to Washington, "stupid black bitch, you hit my car." (Id., at ¶ 40). At the time of the accident, Anthony, Annamarie's father, was in an upstairs bathroom preparing to tile the bathroom. (Id., at ¶ 12). Anthony heard his daughter yelling at someone outside. (Id., at ¶ 13). He went outside and observed two vehicles in front of the house with Washington sitting inside her vehicle. (Id., at ¶¶ 14-15). Howard Ray (Ray), also an African American, was traveling down Ridgeland Avenue and observed Annamarie yelling at Washington. (Id., at ¶¶ 47-49). Ray stopped at the scene and exited his car. At some point, Annamarie told Ray to "take your black ass to your car, you are not laying anybody out, you didn't see the accident and all you're doing is causing a bigger problem than what is going on." (Id., at ¶ 4). Anthony alleges that Ray head-butted him before the police arrived at the scene. (Plaint.'s Statement of Additional Facts ¶ 11).

The police arrived at the scene and informed the parties that they should go to the police

station. (Def.'s 56.1(a)(3) Statement ¶ 23). Anthony and Annamarrie voluntarily drove to the police station, accompanied by Anthony's wife, Anna Falzone, and another daughter, Angela Falzone. (Id., at ¶¶ 24, 31, 34). Washington and Ray also went to the police station. (Id., at ¶ 41, 50). At the police station, defendant took over the investigation. (Id., at 52). Defendant spoke with Washington and Ray. (Id., at ¶¶ 54-55). Washington told defendant that she was accused of being involved in an accident, that racial epithets were said to her, and that Anthony bumped her with his chest. (Id., at ¶¶ 58-59). Washington informed the police that she wanted to pursue a complaint against Anthony for a hate crime. She signed a complaint against Anthony, alleging that he bumped into her with his chest and was yelling slurs. (Id., at ¶¶ 44-45). Ray informed defendant that Anthony used racial epithets toward him and signed two complaints against Anthony, alleging hate crimes. (Id., at ¶¶ 50-51, 60).

Shortly after arriving at the police station, Anthony and Annamarie were handcuffed to a bench. (Plaint.'s Statement fo Additional Facts ¶ 38). Upon arriving at the police station, Angela stayed on an outside bench for a couple of minutes. (Def.'s 45.1(a)(3) Statement ¶ 34). Anna asked defendant if she could leave, and defendant informed her she could not leave until after she gave a statement. (Plaint.'s Statement of Additional Facts ¶ 30). A couple of hours later, Anna asked defendant if she could retrieve the keys to the car from Anthony so that she could retrieve a sweater. Defendant refused to allow her to leave the police station. (Id., at ¶ 31). After Anna gave her statement to defendant, defendant told her that she had to stay at the police station to give her statement to the State's Attorney. (Id., at ¶ 33). At approximately midnight, Anna and Angela gave their statements to the State's Attorney at about midnight and were informed they could leave the police station. (Id., at ¶ 36; Def.'s 56.1(a)(3) Statement ¶ 33).

3

Following the interviews, defendant believed that Annamarie was a suspect in a racial disturbance. (Def.'s 56.1(a)(3) Statement ¶ 56). Defendant contacted Mary Ellen Murphy (Murphy), a State's Attorney, to conduct a felony review as required by the City of Berwyn. (Id., at ¶¶ 65-66). Murphy initially spoke with the detectives and then interviewed several witnesses. (Id., at ¶ 68). Washington related to Murphy that there was a conflict between her and Anthony and that the conflict involved racial overtones. (Id., at ¶ 69). Sometime during the evening, Murphy contacted her supervisor, and felony charges were approved against Anthony. (Id., at ¶ 72). No charges were brought against Annamarie, Anna, or Angela, and Anthony was later acquitted of his charges. (Id., at ¶ 7; Plaint's Statement of Additional Facts ¶ 47).

Defendant argues that the claims against him should be dismissed because he is entitled to qualified immunity. Qualified immunity protects an arresting police officer from a civil suit if a reasonable officer would have believed the arrest was lawful, in light of clearly established law and the information known to the arresting officer. *Marks v. Carmody*, 234 F.3d 1006, 1009 (7th Cir. 2000) (*Marks*). Qualified immunity is not based on whether the arresting officer was ultimately correct; rather, the objective question is whether a reasonable police officer, knowing what he or she knows, would have known that the law, as applied to the circumstances, clearly established that an arrest would be unlawful for lack of probable cause. *Marks*, 234 F.3d at 1009. The qualified immunity "standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Marks*, 234 F.3d at 1009 (citations omitted).

Probable cause exists if the officer believes that the suspect has committed or was committing an offense based on the facts and circumstances known to the officer at the time the arrest is made. *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (*Woods*); *Spiegel v.*

*Cortese*, 196 F.3d 717, 723 (7th Cir. 1999) (*Spiegel*). "Probable cause 'demands even less than probability,' it 'requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.'" *Woods*, 234 F.3d at 996 (citations omitted). Probable cause can be established by an identification or a report from a single, credible victim or eyewitness. *Woods*, 234 F.3d at 996; *Spiegel*, 196 F.3d at 723. The correct question to be answered is whether the officer 'acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed ... after the fact.' *Spiegel*, 196 F.3d at 723 (citation omitted). Furthermore, once probable cause is established, an officer does not have a constitutional duty to conduct further investigation in the hope of finding potentially exculpatory evidence. *Woods*, 234 F.3d at 997; *Spiegel*, 196 F.3d at 723.

A. Anna and Angela Falzone

Anna and Angela allege that they were not free to leave the police station and there was no evidence that they committed a crime. Defendant argues that Anna and Angela's were not seized under the Fourth Amendment. "[A] person has been 'seized' within the meaning of the Fourth Amendment ... if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Here, Anna and Angela were informed by defendant that they were not free to leave the police station until after their statements were taken. While they were not handcuffed or placed in the cell, the fact that they were told by a detective that they were not free to leave, at a minimum, creates a question of material fact that would preclude summary judgment as to this issue.

Defendant also argues that even if Anna and Angela were seized, defendant is entitled to

qualified immunity because he did not violate a clearly established law by not allowing Anna and Angela to leave before they gave their statements.

The evaluation of qualified immunity is a two-step process. The court determines whether plaintiff's claim states a violation of his or her constitutional right and whether the constitutional right was clearly established at the time the violation occurred. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (*Jacobs*). A clearly established right is one in which '[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.' *Jacobs*, 215 F.3d at 766 (citations omitted). This determination is made by looking at controlling Supreme Court precedent and the court's own circuit court decisions on the issue. If controlling precedent is absent, the survey is broadened to include all relevant caselaw in order to determine 'whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.' *Jacobs*, 215 F.3d at 767 (citations omitted).

At the time that Anna and Angela were required to stay at the police station, it was "clearly established that a citizen may not be detained by law enforcement officials without probable cause." *Jacobs*, 215 F.3d at 773. Assuming a seizure took place, the remaining question is whether it was sufficiently clear that a reasonable police officer would understand that by telling Anna and Angela that they needed to stay until their statement was given, violated Anna and Angela's right not to be seized. See *Jacobs*, 215 F.3d at 766. No controlling precedent was found on this precise issue. However, a person may be detained for questioning for a brief period of time without probable cause. See *Terry v. Ohio*, 392 U.S. 1 (1984). In the instant case, Anna and Angela were "detained" for several hours. Thus, material questions of fact remain as to whether defendant is entitled to qualified

immunity as to Anna and Angela's claims.

B. Annamarie's Falzone

Annamarie alleges that any belief of probable cause that she committed a crime was unreasonable. Under Illinois law, a person commits a hate crime when, in part, by reason of actual or perceived race of another individual, he or she commits enumerated acts, including assault or disorderly conduct. 720 ILCS 5/12.7.1(a). A person commits an assault when he or she engages in conduct which places another in reasonable apprehension of receiving a battery. 720 ILCS 5/12-1(a). A person commits disorderly conduct when he or she does any act in such a manner as to alarm or disturb another and to provoke a breach of the peace. 720 ILCS 5/26-1(a)(1). Annamarie does not contest that she made some improper remarks and that some of the remarks included comments about Washington and Ray's race. Following the interviews of Washington and Ray, defendant suspected Annamarie for the possible offense of a hate crime. Defendant's belief that Annamarie committed a hate crime was based on the Washington and Ray interviews which articulated an argument between Annamarie and Washington and racial epithets by Annamarie.

There is no evidence that either Washington's or Ray's statements were not credible. Furthermore, once probable cause was established, defendant did not have a constitutional duty to conduct further investigation in hopes of gathering exculpatory evidence. See *Woods*, 234 F.3d at 996-97; *Spiegel*, 196 F.3d at 725-26.

C. Anthony Falzone

Anthony argues that defendant did not conduct a reasonable investigation; and, had one been conducted, it would have been apparent that probable cause to arrest him failed to exist. Here, defendant had probable cause to arrest Anthony based on the Washington and Ray's interviews and

the complaints signed against Anthony by both Washington and Ray. As stated above, there was no evidence that Washington or Ray's statements or the complaints were not credible, and defendant was justified in relying on the statements and the signed complaints in detaining and arresting Anthony. See *Woods*, 234 F.3d at 996-97; *Spiegel*, 196 F.3d at 725-26.

For the reasons stated, defendant's Motion for Summary as to plaintiffs Anna and Angela Falzone is denied and defendant's Motion for Summary Judgment as to plaintiffs Annamarie and Anthony Falzone is granted.

Dated: February 28, 2001

JOHN W. DARRAH
United States District Judge